**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AVERY M. MCKNIGHT

    Plaintiff,

v.                                               Case No. 3:17-cv-717-J-32PDB

CHAD POPPELL, in his official
capacity as Secretary of the State of
Florida Department of Children and
Families, JOSEPH A. INFANTINO,
individually, and ROBERT
GIBSON, individually,

    Defendants.

## **O R D E R**

This case is before the Court on Defendants Chad Poppell, in his official capacity as Secretary of the Florida Department of Children and Families, and Robert Gibson's Motion to Dismiss and Defendant Joseph Infantino's Motion to Dismiss (Docs. 30, 36). Plaintiff Avery McKnight responded in opposition. (Docs. 32, 37).

**I. BACKGROUND**

On July 30, 2015, McKnight was declared legally insane by Florida's Fourth Judicial Circuit Court and was involuntarily committed to the custody of Florida's Department of Children and Families ("DCF"). (Doc. 19 ¶ 8).

McKnight was admitted to the Northeast Florida Evaluation and Treatment Center; Infantino was the hospital administrator at the treatment center and Gibson was an assistant institution superintendent under Infantino. Id. ¶¶ 6–7, 9.

Several months after being admitted to the treatment center, McKnight informed treatment center "staff and administration of his and others' well-founded safety concerns concerning Paul" who was another resident and was violent. Id. ¶ 29, 31. "Paul was reputed to be a black belt in martial arts" and "had been punching and kicking a brick wall." Id. ¶¶ 29–30. Infantino and Gibson were made aware of McKnight's safety concerns regarding Paul's violent tendencies. Id. ¶¶ 30, 32. Through November 7, 2015, Paul had attacked three staff members, knocking one unconscious, and at least three residents, all without provocation. Id. ¶¶ 33–34. Infantino and Gibson were aware of each incident. Id. On December 12, 2015, Paul ambushed McKnight, kicking him in the head which resulted in "blurred vision, severe pain, suffering, and hospitalization." Id. ¶ 35. McKnight submitted a grievance to Gibson complaining of Paul's conduct, and Infantino was personally aware of the grievance. Id. ¶ 37. Gibson and Infantino failed to take any action. Id. ¶ 38. On December 18, 2015, Paul attacked McKnight again, injuring McKnight's shoulder. Id. ¶¶ 39–40.

In January 2016, McKnight was transferred to Northeast Florida State Hospital where he remained for just over a year. Id. ¶ 10. While at the hospital, McKnight's medical team recommended that he receive day passes, leave of absences, and field trips. Id. ¶ 16. However, hospital staff did not allow McKnight the opportunity to participate in such activities, which allegedly resulted in severe emotional distress and a loss of liberty. Id. ¶¶ 16–17. Further, Plaintiff alleges that he was discriminated against because the hospital lacked a law library, relevant legal materials, and persons trained in the law. Id. ¶¶ 22–24.

McKnight's Third Amended Complaint, the operative complaint, asserts three counts: Disability discrimination by failing to integrate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (2018), against Poppell in his official capacity as the head of DCF (Count I), disability discrimination by denying access to the courts in violation of the ADA against Poppell in his official capacity as the head of DCF (Count II), and deliberate indifference under 42 U.S.C. § 1983 against Infantino and Gibson (Count III). (Doc. 19). Defendants Poppell and Gibson filed a joint motion to dismiss seeking dismissal of all three claims. (Doc. 30). Infantino filed a separate motion to dismiss the § 1983 claim against him but asserts the same arguments, almost verbatim, as Gibson. (Doc. 36).

3

**II. DISCUSSION**

**A. ADA Claims Against Poppell**

Title II of the ADA states that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, a plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007). McKnight alleges two claims under the ADA against Poppell: failure to afford freedom from undue restraint by failing to treat McKnight in the most integrated setting (Count I), and denying access to the courts by failing to provide access to legal materials or persons trained in the law (Count II). (Doc. 19 ¶¶ 1–26).

<u>1. Plaintiff's ADA failure to integrate claim
does not require him to plead a physical injury.</u>

McKnight alleges that by failing to grant him day passes, leaves of absence, and field trips, DCF discriminated against him. Id. ¶ 16. Poppell argues that McKnight must demonstrate that he suffered more than a de minimus physical injury to assert a failure to integrate ADA claim. (Doc. 30 at

4

6). McKnight contends that such requirement only applies to persons subject to the Prisoner Litigation Reform Act, and because he was civilly committed to a hospital, he is not a prisoner subject to the PLRA. (Doc. 32 at 3–4). Poppell asserts that the caselaw governing PLRA ADA claims applies "to all detainees to include persons, like the Plaintiff, who have been involuntarily committed to a State hospital." (Doc. 30 at 6 n.1).

The PLRA defines a prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (2018); see also id. § 1915(h) (same). The Eleventh Circuit has stated that "the PLRA's straightforward definition of 'prisoner' . . . appl[ies] only to persons incarcerated as punishment for a criminal conviction . . . . A civil detainee simply does not fall under § 1915's definition of 'prisoner,' . . . . Civil detention is by definition non-punitive." Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002).

McKnight alleges that he was "declared legally insane by the Circuit Court . . . . Plaintiff was found to have been suffering from a mental illness and an inability to discern right from wrong. Accordingly, Plaintiff was ordered to be involuntarily committed to the custody of the DCF for treatment, training, and rehabilitation." Based on these allegations, McKnight was not a prisoner

5

because he was not "incarcerated as punishment for a criminal conviction . . . ." Troville, 303 F.3d at 1260. Therefore, McKnight is not required to allege a physical injury for his ADA claim, which is the only basis for which Poppell seeks dismissal.

2. Plaintiff's ADA access to courts claim requires a harm.

McKnight alleges that he was discriminated against by virtue of his disability because the hospital failed to provide a law library, access to legal research tools, or access to persons trained in the law. (Doc. 19 ¶¶ 23–24). Poppell contends that McKnight must allege "how he was harmed and prejudiced with respect to any litigation in which he was involved." (Doc. 30 at 7). However, McKnight argues that he is not required to allege a specific harm for his ADA claim, and that the cases Poppell relies upon concerned constitutional access to the courts claims not ADA claims. (Doc. 32 at 5).

To allege denial of the right to access the courts under Title II of the ADA, "a plaintiff must show actual injury by demonstrating that her efforts to pursue a nonfrivolous claim were frustrated or impeded by an official's action." McCauley v. Georgia, 466 F. App'x 832, 836 (11th Cir. 2012) (citing Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998)). In McCauley, the Eleventh Circuit dismissed an ADA access to the courts claim because the plaintiff did not allege an actual injury. Id. at 837. The court explained: "[The plaintiff] did not explain how [the] alleged deficiencies affected her case or denied her access

6

to the courts . . . ." Id. Thus, the plaintiff's ADA claim was dismissed under Federal Rule of Civil Procedure 12(b)(6). Id.

McKnight has not alleged an injury resulting from DCF's failure to provide legal materials. See McCauley, 466 F. App'x at 836–37. This deficiency is fatal to the claim. See id. (dismissing complaint under Rule 12(b)(6) where plaintiff failed to allege a resulting harm for her ADA access to the courts claim). Therefore, Count II will be dismissed.[1]

**B. Plaintiff's § 1983 Claim and Defendants' Qualified Immunity**

McKnight alleges that Gibson and Infantino were deliberately indifferent to his serious medical need when they were informed about the danger Paul

---

[1] Although the Eleventh Circuit in McCauley dismissed the ADA access to the courts claim for failing to state a claim, it could also have been dismissed for lack of standing. Regardless of the claim, all plaintiffs—to satisfy Article III—must allege an injury-in-fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). In Bass—the case McCauley relies upon—the Eleventh Circuit found that "[t]he doctrine of standing requires that an inmate alleging a violation of the right of access to the courts must show an actual injury." Bass, 143 F.3d at 1445.

That McKnight's claim was brought under the ADA, as opposed to the Constitution more generally, does not change the requirement for a harm. See Salcedo v. Hanna, 936 F.3d 1162, 1167 (11th Cir. 2019) ("[A]n act of Congress that creates a statutory right and a private right of action to sue does not automatically create standing; 'Article III standing requires a concrete injury even in the context of a statutory violation.'" (quoting Spokeo, 136 S. Ct. at 1549)). Thus, even if a specific harm is not required for an ADA access to the courts claim, it is nonetheless required for Article III standing.

7

posed to McKnight and took no action to protect him. (Doc. 19 ¶¶ 27–44). Gibson and Infantino contend that they are entitled to qualified immunity because the allegations only demonstrate a collective knowledge among the treatment center staff and not that Gibson and Infantino each individually knew of the serious risk of harm to McKnight.[2] (Docs. 30 at 9, 36 at 7). This argument fails.

"[T]he involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint." Lavender v. Kearney, 206 F. App'x 860, 862–63 (11th Cir. 2006) (citing Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982)); see also Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994) ("[A]n involuntarily committed patient has a constitutionally protected right to reasonably safe conditions of confinement . . . ."). "[F]or an involuntarily civilly-committed plaintiff to establish a § 1983 claim for violation of his due process rights, he must show that state officials were deliberately indifferent to a substantial risk to his safety." Kearney, 206 F. App'x at 862–63 (citing Purcell v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To prevail on such a claim brought under

---

[2] Gibson and Infantino concede that "Plaintiff's right to be protected from assaults by other patients was a clearly established right at the time of the alleged incident." (Docs. 30 at 8, 36 at 6). Thus, the Court need not analyze the second prong of the qualified immunity analysis at this stage of the proceeding.

8

§ 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation."[3] Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015) (citations omitted). Stated differently, "[a] prison official violates the Eighth [or Fourteenth] Amendment 'when a substantial risk of serious harm, <u>of which the official is subjectively aware</u>, exists and the official does not respond reasonably to the risk.'" Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis in original) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)).

The first element, a substantial risk of serious harm, is evaluated objectively. Id. "There must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." Brooks, 800 F.3d at 1301.

> The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." Rodriguez[ v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007)] (citing Farmer[ v. Brennan, 511 U.S. 825, 829, 837, 844 (1994)]

---

[3] "[R]elevant case law in the Eighth Amendment context also serves to set forth the contours of the [Fourteenth Amendment] due process rights of the civilly committed." Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996).

9

and other cases) (footnote omitted). To satisfy the objective component, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." Id.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). Gibson and Infantino only argue that the subjective component of the second element is missing from McKnight's allegations—that Gibson and Infantino had subjective knowledge that McKnight faced a substantial risk of serious harm. (Docs. 30 at 8–10; 36 at 6–7).

The Third Amended Complaint alleges that Infantino and Gibson "were made personally aware of Plaintiff's concerns about Paul, and the basis for Plaintiff's concerns about Paul." (Doc. 19 ¶ 32). Additionally, McKnight alleges that Gibson and Infantino each were aware of Paul's prior attacks on staff members and residents. Id. ¶¶ 33–34. Moreover, McKnight alleges that Gibson and Infantino were "personally aware" of McKnight's grievance regarding Paul's violent conduct, which was submitted two days after Paul attacked McKnight the first time. Id. ¶¶ 35, 37. Although Infantino and Gibson are correct that knowledge of the risk of harm cannot be imputed to them from what others knew, the Third Amended Complaint sufficiently alleges that Gibson and Infantino each <u>individually</u> knew of McKnight's risk of serious harm. See Caldwell, 748 F.3d at 1099. Thus, based on the allegations of the Third Amended Complaint, Gibson and Infantino are not entitled to dismissal of

10

Count III. However, they may assert qualified immunity again at summary judgment.

Accordingly, it is hereby

**ORDERED:**

1. Defendants Poppell and Gibson's Motion to Dismiss (Doc. 30) is **GRANTED in part and DENIED in part**.

    a. The Motion is granted as to Count II, but is otherwise denied.

    b. Count II is **DISMISSED without prejudice**.

2. Defendant Infantino's Motion to Dismiss (Doc. 36) is **DENIED**.

3. Not later than **March 27, 2020**, Plaintiff, if he so chooses, may file a Fourth Amended Complaint; realleging Count II if he has a good faith basis to do so.[4]

4. Not later than **April 24, 2020**, Defendants shall either answer the Third Amended Complaint (if a new complaint is not filed), or respond to the Fourth Amended Complaint (if one is filed).

5. All dates and deadlines in the Case Management and Scheduling Order (Doc. 41) continue to govern this case.

---

[4] While no party has raised the issue, as the case progresses, the Court will determine whether the ADA claims against Poppell should be tried together with the deliberate indifference claim against Infantino and Gibson.

**DONE AND ORDERED** in Jacksonville, Florida this 4th day of March, 2020.

/s/ Timothy J. Corrigan
TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record