United States District Court
Middle District of Florida
Jacksonville Division

**AVERY M. MCKNIGHT,**

  *Plaintiff,*

V.              NO. 3:17-CV-717-J-32PDB

**ROBERT GIBSON ET AL.,**

  *Defendants.*

# Order

  Avery McKnight moves to compel medical records from defendant Chad Poppell in his official capacity as Secretary of the Florida Department of Children and Families ("DCF"). Doc. 52.

  In the third amended complaint, McKnight alleges that a state court found he was legally insane because of a mental illness and committed him to DCF's custody for treatment. Doc. 19 ¶¶ 8–11. He alleges that personnel at the Northeast Florida State Hospital excluded him from certain services or programs, failed to treat him in the most integrated setting for his needs, and denied his requests for day passes or field trips even though his medical team had recommended them. Doc. 19 ¶¶ 14–16. He alleges that at the North Florida Evaluation and Treatment Center, he warned a counselor and other staffers that he and others "were concerned about a known violent resident named Paul, who had been punching and kicking a brick wall" and was reputed to have a black belt in martial arts. Doc. 19 ¶¶ 29–32. He alleges that Paul attacked two staff members and at least three residents and, after McKnight's warnings, attacked another staff member. Doc. 19 ¶¶ 33–34. He alleges that about a month after his warnings, Paul kicked him in the head, causing blurred vision, pain, suffering, and hospitalization. Doc. 19 ¶ 35. He alleges that he submitted a grievance

about the attack and, a few days later, Paul attacked him again, injuring his left shoulder. Doc. 1 ¶¶ 37, 39.

McKnight contends DCF discriminated again him because of a disability and individual defendants were deliberately indifferent to a foreseeable risk of serious harm. Doc. 1 at 3–4, 5–7.

McKnight explains that he requested these documents or items from Poppell in June 2020:

- Paul Secada's medical file and/or chart during his involuntary commitment to include his stay during 2015–2016. Provide all videos and reports of all Mr. Secada's attacks on staffers and residents including, but not limited to, staffers Registered Nurse (RN) Diane (LNU), Barry Moss, and Burney (LNU), and residents Scott Matlock, Rashad Dawkins, Keyon Limpskin and Jimmie Cason. Also produce all related documents, including incident forms concerning Mr. Secada's attacks on staff and other residents, written complaints concerning Mr. Secada's attacks on staff and other residents, and all other communications and/or memoranda concerning Mr. Secada's attacks on staff and other residents.
- McKnight's complete chart and/or file compiled during his stay at Northeast Florida State Hospital.

Doc. 52 at 1–2.

McKnight states that Poppell responded with some documents but asserted the remainder were protected under state and federal privacy laws requiring a court order and good cause. Doc. 52 at 2; *see* Doc. 52-1 (the defendants' privilege log). McKnight states that although he could request his own medical records directly from the hospital, he would have to pay $1 a page to have the records copied. Doc. 52 at 2.

McKnight requests an order compelling Poppell to provide the documents within thirty days (the concluding paragraph requests fourteen days) under state and federal law. Doc. 52 at 2, 3.

Chapter 394 of the Florida Statutes, titled "Mental Health," provides that clinical records are confidential but may be released without authorization from the patient if a court orders the release. Fla. Stat. § 394.4615(2)(c). "In determining whether there is good cause for disclosure, the court shall weigh the need for the information to be disclosed against the possible harm of disclosure to the person to whom such information pertains."[1] *Id.*

Under Health Insurance Portability and Accountability Act ("HIPAA") regulations, a "covered entity" "may disclose protected health information ["PHI"] in the course of any judicial or administrative proceeding" without written authorization from the affected individual (1) in "response to an order of a court or administrative tribunal, provided that the covered entity discloses only the [PHI] expressly authorized" or (2) in "response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal" if the "covered entity receives satisfactory assurance" that the party seeking the information has made reasonable efforts to obtain a qualified protective order.[2] 45 C.F.R. § 164.512(e)(1)(i)–(ii)(B). A qualified protective order is "an order of a court … or a stipulation by the parties to the litigation" that (1) prohibits "the parties from using or disclosing the [PHI] for any purposes other than the litigation or proceeding for which such information was requested" and (2) requires "the return to the covered entity or destruction of the [PHI] (including all copies made) at the end of the litigation or proceeding." *Id.* § 164.512(e)(1)(v).

---

[1]The defendants also cite Fla. Stat. § 916.107(8) in the log. Doc. 52-1 at 1. That statute, under Chapter 916 ("Mentally Ill and Intellectually Disabled Defendants"), provides that a clinical record for a forensic client may be released "[t]o persons authorized by order of court and to the client's counsel when the records are needed by the counsel for adequate representation." Fla. Stat. § 916.107(8)(a)(2).

[2]PHI is "individually identifiable health information" that is transmitted by or maintained in electronic media or "any other form or medium." 45 C.F.R. § 160.103. A "covered entity" is a health plan, a health care clearinghouse, or a "health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." *Id.*

3

McKnight establishes good cause for the records. PHI of McKnight and Secada is necessary to prosecute and defend the claims in this action, McKnight could obtain his own PHI without a court order, and the possible harm of disclosure to Secada is minimal because of disclosure restrictions.

The Court **grants** the motion, Doc. 52, to the extent it will separately enter a qualified protective order and **directs** the defendants to fully respond to McKnight's discovery requests by January 27, 2021.

**Ordered** in Jacksonville, Florida, on December 22, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*